## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

REVEL ZAIN                                              PLAINTIFF

v.                                CIVIL ACTION NO. 4:12CV-P5-M

ADVANCE HEALTH CARE PROVIDER et al.              DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment filed by Defendant Advanced Correctional Healthcare, Inc.[1] (DN 26). For the reasons set forth below, the motion will be granted.

### I. SUMMARY OF CLAIMS

On initial review of this *pro se*, *in forma pauperis* complaint, the Court allowed Plaintiff's Eighth Amendment claim regarding failure to provide medical care and state-law claims to go forward against Defendant ACH.

In his complaint, Plaintiff alleged that, as a state inmate housed at Hopkins County Jail ("HCJ"), he was attacked by three other inmates on November 17, 2011. He alleged that, after he pushed an emergency button, guards took him to the ACH nurses' station, where he told "Nurse Connie and Sgt. Stephens" that he had internal bleeding, cuts to his arms and knees, a fractured left middle finger, and needed to go to the hospital emergency room. Plaintiff alleged that they did nothing for his injuries and simply put him in isolation where he continued to be in pain and spit out blood.

---

[1] According to the answer to the complaint, this Defendant was misidentified in the complaint by Plaintiff as "Advance Healthcare Provider." Hereinafter, this Defendant will be referred to as "ACH."

Plaintiff alleged that he complained repeatedly to the guards about his injuries and was told that he needed to fill out a sick-call slip before he could see a doctor for treatment. He stated he submitted a sick-call slip and was taken to see Nurse Connie where he again requested emergency medical treatment for his fractured left finger and internal bleeding. He alleged that he was told there was nothing they could do for him and that he kept being told by ACH nurses that, without seeing a doctor, there was nothing they would do for him other than wrap his finger with tape. He alleged that it is the practice of Defendant ACH to charge inmates $20 for a doctor visit even though they only get to see a nurse and nurse assistant. He also alleged that, after he filed a grievance, he was told that his finger would heal normally with no treatment and that he could order pain medication from the commissary, which, he alleged, they knew he could not due to poverty.

## II. ANALYSIS

*Summary judgment standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears

2

the burden of proof.  *Id*.  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury.  *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).  The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  *Id*. (internal quotation marks omitted).

*Eighth Amendment claim*

Defendant ACH argues that it cannot be held responsible for the actions of its employees unless the alleged actions were performed in compliance with ACH policy or custom.  Further, Defendant ACH argues that Plaintiff's rights were not violated.  Defendant ACH argues that Plaintiff's allegedly broken finger does not rise to the level of a serious medical condition.  Defendant ACH asserts that the nurse examined the finger, and implemented a course of treatment based on her observations, including stabilizing the finger and providing pain medication.  Thus, Defendant ACH argues Plaintiff has not shown the objective component of an Eighth Amendment claim.  Defendant ACH also argues that Plaintiff has not shown the subjective component of an Eighth Amendment claim because it was not until two days after the

fight that Plaintiff submitted a sick-call request form due to his finger. At that point, the nurse secured the swollen and tender finger to another finger with tape and prescribed Tylenol 500 mg twice daily for three days. Ten days later, Plaintiff again submitted a sick-call request form stating that he had a fractured finger. He received an order for Tylenol to treat the finger pain but refused the medication and thereafter made no more complaints about his allegedly fractured finger.

Attached to Defendant ACH's motion are documents in support. First, there are Medical Progress Notes regarding Plaintiff containing entries on November 17, 19, and 30, 2011, March 2, 2012, and March 3, 2012. Those Progress Notes shows that on November 17, 2011, Plaintiff was brought to medical after the fight with scratches on his face and knees and bruising and swelling of his right shoulder. Another Progress Note dated November 19, 2011, records that Plaintiff believed his finger was broken during the fight. The Progress Note noted that the middle finger of the left hand was swollen and tender to the touch but no deformity was noted. The finger was taped and secured and Tylenol was prescribed. A Progress Note also notes that Plaintiff received an order for Tylenol for finger pain on November 30, 2011, but he refused the medication. The next entries on the Progress Note are in March 2012 and do not contain any complaints of finger pain. Also attached is a sick-call request form dated November 29, 2011, in which Plaintiff stated that he had a fractured left finger and needed medical attention. A November 30, 2011, "Refusal of Treatment Medical Release Form" shows that Plaintiff refused Tylenol 500 mg.

In response to the summary-judgment motion (DN 33), Plaintiff essentially reiterates the claims in his complaint. He asserts that this "injuries w[]ere so sever[e] that the proper

procedure was to take Mr. Zain to the hospital for this medical emergency for internal bleeding and x-ray as Mr. Zain complained about the broken finger, but this was never done . . . ." He asserts that when he related that he had internal bleeding and needed to go to the hospital emergency room due to internal bleeding and a broken finger, "[i]t was 'ACH' employee Connie Alexander['s] responsibility as 'ACH' employee under contract with HCJ to advise Jailers that Mr. Zain had to be transported to the hospital medical emergency room."

He further argues that it is the policy and custom of Defendant ACH to have inmates pay $20 to see the doctor. "But inmates never get to see a doctor. When inmates are called to the medical station due to medical issue the nurse are the one making all the decision without allowing inmates to see any medical doctor . . . The only adequate training 'ACH' nurses have is to make sure to collect the 20 dollar fee for 'ACH' and Defendant Joe Blue before inmates can go to the medical station."

In reply, Defendant ACH states that Plaintiff has failed to carry his burden of coming forward with evidence raising a triable fact. Defendant ACH also argues that Plaintiff has not shown any causal link between a policy of requiring a $20 payment and a constitutional violation.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). A prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective

5

component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Plaintiff attaches no exhibits to his response. There also were no attachments to his complaint. However, his complaint was verified, *i.e.*, Plaintiff certified under penalty of perjury that the contents of the complaint were "true and correct." Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, here, all of the statements in Plaintiff's complaint which contradict Defendant ACH's evidence are merely Plaintiff's conclusions, such as his contention that he had internal injuries and required a trip to the emergency room. As such, they are not sufficient to raise a genuine issue of triable fact. Fed. R. Civ. P. 56(c)(4) (affidavits opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Weberg*, 229 F.3d at 526 n.13. "The non-moving party cannot rely on conclusory allegations to counter a motion for summary judgment." *Nix v. O'Malley*, 160 F.3d 343, 347 (6th Cir.1998) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990)).

Moreover, Plaintiff's contentions that he had internal injuries and required a trip to the emergency room simply evidences a disagreement with the treatment he was given. He was examined by the nurse, who noted no internal injuries and apparently did not find a need for emergency-room treatment. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

6

guess medical judgments and to constitutionalize claims which sound in state tort law."
*Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In other words, a court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Thus, a difference in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). "The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice." *Rouse v. Hiland*, 5:08CV-P186-R, 2010 WL 2305492, at *3 (W.D. Ky. June 7, 2010) (citing *Estelle*, 429 U.S. at 107).

With regard to Plaintiff's claims concerning a $20 copay for medical services, while the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost. *See Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997) (deliberate-indifference standard does not guarantee prisoners the right to be entirely free from cost considerations that figure into medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation); *see also Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (per curiam) (no basis for due process claim where deductions from prisoner accounts were assessments for value received). It is only when

7

medical care is denied to inmates because of their inability to pay that deliberate indifference is implicated. Also, although Plaintiff alleges that he was charged $20 for a doctor's visit, but only was able to see a nurse, that allegation contradicts the evidence attached to Defendant ACH's summary-judgment motion. The "County Jail Sick Call Request Form" filled out by Plaintiff on November 29, 2011, has as the "Service Requested" the box marked for "Doctor/Nurse." Plaintiff was seen by a nurse, and $20 was charged to his account. No constitutional violation is apparent from the record.

Similarly, with regard to his assertion that he was told he could order pain medication from the commissary despite Defendant ACH's knowledge of his poverty, nothing in the record supports his assertion that he was denied medicine based on his inability to pay. The sick-call request form filled out by Plaintiff clearly states: "No inmate will be denied medical care due to inability to pay or due to insufficient funds in the inmate's account." It also provides: "If there are insufficient funds in the account the fees will be debited and the account will show a negative balance." Thus, it appears from the record that insufficient funds would not have interfered with his receiving the Tylenol. The Court finds that the record taken as a whole could not lead the trier of fact to find for Plaintiff, and Defendant ACH is entitled to judgment in its favor on Plaintiff's Eighth Amendment claims. *See Matsushita Elec. Indus., Co.*, 475 U.S. at 586.

***State-law claims***

Defendant ACH does not address any state-law claims. In his response, Plaintiff refers to no particular state statute, only the Kentucky Constitution. Although Defendant ACH fails to address Plaintiff's state-law claims, the Court finds that those claims should be dismissed as well. The legal analysis for Plaintiff's claims under the Eighth Amendment and Section 17 of

the Kentucky Constitution is the same. *See Simms v. City of Harrodsburg*, No. 06-CV-104-H, 2007 WL 2792174, at *5 (E.D. Ky. Sept. 21, 2007) ("[Section 17 of the Kentucky Constitution] is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky Courts.") (citing *Workman v. Commonwealth*, 429 S.W.2d 374, 376 (Ky. 1968)); *Riley v. Commonwealth*, 120 S.W.3d 622, 633 (Ky. 2003) ("We regard [the] variation in phraseology [between the Eighth Amendment and the Section 17 of the Kentucky Constitution] as a distinction without a difference."). As such, the Court's analysis of the Plaintiff's Eighth Amendment claims is equally applicable to the claims arising under Section 17. Thus, for the same reasons as above, the Court finds that Defendant ACH is entitled to summary judgment in its favor regarding the state-law claims.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendant ACH's motion for summary judgment (DN 26) is **GRANTED**. **IT IS ORDERED** that Plaintiff's claims against Defendant ACH are **DISMISSED**.

Date: August 6, 2013

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
 Counsel of record
4414.009

9